UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| MATTHEW KUSTES, ) | |
| ) | |
| Plaintiffs ) | CIVIL ACTION NO. 5:12-323 |
| ) | |
| v. ) | |
| ) | **OPINION AND ORDER** |
| LEXINGTON-FAYETTE ) | |
| URBAN COUNTY GOVERNMENT, ) | |
| ) | |
| JIM GRAY, in his capacity ) | |
| as Mayor of Lexington-Fayette ) | |
| Urban County Government, ) | |
| ) | |
| LEXINGTON POLICE ) | |
| DEPARTMENT, ) | |
| ) | |
| RONNIE BASTIN, in his capacity ) | |
| as Chief of the ) | |
| Lexington Police Department, ) | |
| ) | |
| OFFICER JOSH MITCHELL, ) | |
| individually and in his capacity ) | |
| as an officer of the ) | |
| Lexington Police Department, ) | |
| ) | |
| and ) | |
| ) | |
| UNKNOWN OFFICERS, individually ) | |
| and in their capacities as officers ) | |
| of the Lexington Police Department, ) | |
| ) | |
| Defendants ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the motion for summary judgment (DE 32) filed by the defendant Josh Mitchell, an officer with the Lexington-Fayette Urban County Government Division of Police.

## I. Background.

For purposes of this motion, the Court assumes the truth of the facts set forth in the deposition testimony of the plaintiff Matthew Kustes. The Court has reviewed the other depositions in the record and has relied on the deposition testimony of Officer Mitchell only to fill in certain facts not addressed in Kustes's deposition.

During the relevant time period, the plaintiff Matthew Kustes resided with six roommates at 305 Grosvenor Avenue in Lexington, Kentucky. (DE 51, Kustes Dep. at 14-15.) On October 22, 2011, there was a party at the house next door, which is located at 303 Grosvenor Avenue. (DE 51, Kustes Dep. at 21.) At the time, five people resided at 303 Grosvenor Avenue and all were fraternity brothers of Kustes. (DE 51, Kustes Dep. at 19.) There were probably 20 people at the party. (DE 51, Kustes Dep. at 64.)

Officer Mitchell testified that at about 12:45 a.m. on October 23, the police received a call complaining about the noise at the party. (DE 52, Mitchell Dep. at 51.) He testified that he and Officer Ron Moore arrived at the house at about the same time. (DE 52, Mitchell Dep. at 52-53.) He testified that the officers went to the back of the house because, at "[t]his house, primarily they use the back door because that's where the parking lot is for this house" and that was where the noise was coming from. (DE 52, Mitchell Dep. at 54.) Officer Mitchell testified that there were about five to seven people in the back of the house. (DE 52, Mitchell Dep. at 54.)

Officer Mitchell testified that someone told the officers that the residents were all inside and Officer Moore asked that person to tell the residents to come outside to speak with the officers. (DE 52, Mitchell Dep. at 56.) A few people went inside and the rest left the residence. (DE 52, Mitchell Dep. at 56-57.) The officers then heard the door lock. (DE 52, Mitchell Dep. at 56.) Officer Mitchell then went to the front of the house while Office Moore knocked on the back door. (DE 52, Mitchell Dep. at 57.)

Officer Mitchell testified that the officers continued to knock for a few minutes and then they just listened to see what was happening inside the house. (DE 52, Mitchell Dep. at 58.) Officer Mitchell testified that, during this time period, he would periodically walk to the back of the house to check on Officer Moore as a safety measure. (DE 52, Mitchell Dep. at 60-61.) Officer

The plaintiff Kustes testified that when he returned to his house from the restaurant, the officers were still next door at 303 Grosvenor and, at some point, he walked over. (DE 51, Kustes Dep. at 28-32.) He testified that Officer Mitchell was on the front porch. (DE 51, Kustes Dep. at 34.) He spoke to Officer Mitchell and said, "if they don't want you there, shouldn't you all leave, or something along those lines." (DE 51, Kustes Dep. at 32.) Mitchell testified that he had been at the scene about 20 to 30 minutes when Kustes approached him. (DE 52, Mitchell Dep. at 59.)[1]

---

[1] There is a discrepancy regarding the timing of these events. Again, Officer Mitchell testified that he did not even arrive at the house until 12:45 a.m. Kustes testified that he left his house at about 11:00 p.m. to get something to eat and saw the officers at 303 Grosvenor at that time. (DE 51, Kustes Dep. at 27-

3

Kustes testified that Officer Mitchell told him he should "go home." (DE 51, Kustes Dep. at 57.) Kustes then asked Officer Mitchell for the phone number of the Lexington-Fayette Urban County Government Division of Police. (DE 51, Kustes Dep. at 32.) Officer Mitchell gave him the number and Kustes called and "filed a complaint." (DE 51, Kustes Dep. at 33, 39.) He did this because the officers "had been there for about an hour now standing outside" and he "just thought [he] should." (DE 51, Kustes Dep. at 33.) Kustes testified that, "[w]ell, I mean, they were my fraternity brothers, and they'd been standing out there for – I just thought an hour for them standing out there was a little excessive, so I went over there and asked them to leave. . . ." (DE 51, Kustes Dep. at 45-46.)

Kustes testified that, after he got off the phone, he tried to block Officer Mitchell from going to the back of the house. (DE 51, Kustes Dep. at 40.) He testified that he stepped in front of the officer so that the officer could not get around him and told the officer that he "should probably leave if they don't want you here." (DE 51, Kustes Dep. at 41-42.) Kustes testified that Officer Mitchell told him "to get out of the way again. He was really rude. . ." (DE 51, Kustes Dep. at 42, 55.) Kustes testified that he then "stepped out of the way." (DE 51, Kustes Dep. at 42.)

---

29.) The timing discrepancy is not important and, for purposes of this motion, the Court will assume that Kustes's testimony regarding the timing of the events is accurate.

Officer Mitchell's testimony regarding the encounter largely agrees with Kustes's testimony. Officer Mitchell agreed that Kustes stepped in front of him and attempted to block the officer's path. (DE 52, Mitchell Dep. at 101.) Officer Mitchell testified that Kustes "stepped into my path . . . after asking why we were there and being told why we were there – for a noise complaint – he stepped directly into my path to stop what I was doing and very close to me – within inches – said . . . he was not going anywhere or I was not going anywhere – whatever it was – the situation was not going to continue as we planned, and he just stood there." (DE 52, Mitchell Dep. at 100.)

Kustes testified that Officers Mitchell and Moore were "walking back and forth." (DE 51, Kustes Dep. at 44.) He testified that he also got in Officer Moore's way during the course of the investigation. "I got in his way. I said whatever, you know, you all shouldn't be here." (DE 51, Kustes Dep. at 42-44.) Kustes testified that Officer Moore yelled at him "you need to go home, get out of the way, this is none of your business." (DE 51, Kustes Dep. at 43.) He testified that Officer Moore said, "'get out of my way, prick,' and then walked around." (DE 51, Kustes Dep. at 44.)

Kustes testified that he followed the officers to the back of the house and that the officers pushed open the back door and entered the kitchen. (DE 51, Kustes Dep. at 49-50.) He testified that he again "got in front of them in the kitchen. . . and I just stood in their way and asked them to leave or [said].

5

. . you can't walk into someone's house or something like that. . . ." (DE 51, Kustes Dep. at 50.) He testified that he was in front of both officers at this point. (DE 51, Kustes Dep. at 52.) He testified that he was "blocking [the officers] from walking in, but [the officers] were blocking others from walking out." (DE 51, Kustes Dep. at 59.) Kustes testified that Officer Mitchell was "obviously irritated by me standing in front of them in the kitchen. . . ." (DE 51, Kustes Dep. at 71.) He testified that he told the officers that he knew one of the owners of the house. (DE 51, Kustes Dep. at 57-58.) He testified that he probably told the officers he did not have to leave and was not going to. (DE 51, Kustes Dep. at 63.) But Kustes also testified that he did not recall the officers giving him the opportunity to leave the house at this point. (DE 51, Kustes Dep. at 62, 63.)

Kustes testified that another man identified as "Tanner," who appeared to Kustes to be intoxicated, was in the kitchen and "was pretty much just being a smart-aleck." (DE 51, Kustes Dep. at 50-51, 53.) He testified that Officer Moore slammed Tanner against an island and arrested him. (DE 51, Kustes Dep. at 50.) He testified that Officer Mitchell then arrested Kustes, handcuffed him and took him outside. (DE 51, Kustes Dep. at 58-59.)

The citation states that Kustes was arrested at 2:25 a.m. for criminal trespass, third degree. (DE 52, Mitchell Dep., Ex. 1.) It states, "subject remained unlawfully on premise[s] after being told to leave by officers

6

multiple times during a loud party call. Subject refused to leave and there were no residents of the house present. Subject stated he did not have to leave and that he wasn't going to." (DE 52, Mitchell Dep., Ex. 1.)

Officer Mitchell testified that he arrested Kustes because, "when I leave this place, I have to know that it's reasonably secure to protect people's property. We have a duty for life and property. If I can't verify that this subject is. . . welcome or at least even allowed to be there, I don't have a whole lot of options other than to ask him to leave, and he refuses, then at that point he is unlawfully remaining in someone else's home . . . so I arrested him based on that fact." (DE 52, Mitchell Dep. at 87.)

Officer Mitchell further testified that he believed he needed to protect any personal or valuable items in the residence. (DE 52, Mitchell Dep. at 97.) He testified that it was his responsibility "to make sure that no one was in the house – to give a conscious effort to get rid of everyone in the house." (DE 52, Mitchell Dep. at 97.) He testified that, if Kustes had simply left the residence, then he would not have been arrested. (DE 52, Mitchell Dep. at 98.)

Kustes was booked into the Fayette County Detention Center at about 3:00 a.m. (DE 51, Kustes Dep. at 67.) A trial was conducted in Fayette District Court on the criminal trespass charge against Kustes. After the government presented its case-in-chief, the district judge entered a directed verdict in Kustes's favor.

With this action, Kustes originally asserted claims against five named Defendants: the Lexington-Fayette Urban County Government (LFUCG), the LFUCG Division of Police, LFUCG Mayor Jim Gray, LFUCG Division of Police Chief Ronnie Bastin, and Officer Mitchell.

As a result of a prior opinion by this Court, the sole remaining Defendants in this action are Officer Mitchell and "unknown officers" of the LFUCG Division of Police. The sole remaining claims are the claims asserted under 42 U.S.C. § 1983 that the officers violated Kustes's rights under the Fourth Amendment set forth in Counts I and II of the amended complaint and the state law claims set forth in Counts IV through XI.

## II. Analysis

### A. Unknown Officers

As an initial matter, Kustes asserts claims against "Unknown Officers," in both their individual and official capacities. Discovery in this matter is now complete and Kustes has not moved to amend his complaint to identify the unnamed officers. Accordingly, the claims against the unknown officers will be dismissed.

### B. **Officer Mitchell**

Kustes asserts claims against Officer Mitchell in both his individual and official capacities. As to the claims against Officer Mitchell in his official capacity, as explained in this Court's opinion and order dated September 3, 2013, these claims are, in effect, claims against the county. *Matthew v.*

*Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *Commonwealth v. Harris*, 59 S.W.3d 896, 899 (Ky. 2001). Accordingly, all claims against Officer Mitchell in his official capacity must be dismissed.

As to the § 1983 claims against Officer Mitchell in his individual capacity, in his motion for summary judgment, Officer Mitchell asserts that he is entitled to qualified immunity on these claims. "Governmental actors are shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quotations and citation omitted).

"In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry." *Id*. at 1865. "The first asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury . . . show the officer's conduct violated a [federal] right [.]" *Id*. (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id*. "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Id*.

The Court will first address whether, assuming Kustes's version of the facts, Officer Mitchell arrested Kustes without probable cause. *See Williams ex rel. Allen v. Cambridge Bd. of Educ*., 370 F.3d 630, 636 (6th Cir.2004)

9

(stating that, under the Fourth Amendment, an officer "may not seize an individual except after establishing probable cause that the individual has committed, or is about to commit, a crime.") Probable cause depends on whether, at the moment of arrest, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

The Court need not address whether Officer Mitchell had probable cause to arrest Kustes for criminal trespass. This is because "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 593 (2004). "That is to say, [the officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id*. at 594. Further, the offense for which there is probable cause to arrest need not be closely related to or based on the same conduct as the offense for which the plaintiff was arrested. *Id*.

Given the facts known to Officer Mitchell at the time of the arrest, he had probable cause to arrest Kustes for obstructing governmental operations under KRS § 519.020. That statute provides that "[a] person is guilty of obstructing governmental operations when he intentionally obstructs,

impairs or hinders the performance of a governmental function by using or threatening to use . . . physical interference."

Kustes himself testified that he physically interfered with the officers several times during the course of their investigation of the noise complaint. He testified that he intentionally placed himself in the path of both Officers Mitchell and Moore and repeatedly demanded that they leave the premises in the middle of the officers' investigation. The investigation of noise complaints fall within the duties of police officers.

Kustes argues that there was not probable cause to arrest him for this offense because the officers were able to investigate the noise complaint despite his attempts to interfere with the investigation. But the statute does not prohibit individuals only from successfully stopping a police investigation. It prohibits individuals from *obstructing*, *impairing* or *hindering* a police investigation. Further, "[w]hile probable cause means that officers must show more than mere suspicion, the probable cause requirement does not require that they possess evidence sufficient to establish a prima facie case at trial, much less evidence sufficient to establish guilt beyond a reasonable doubt." *United States v. Stubblefield,* 682 F.3d 502, 508 (6th Cir. 2012). Kustes's self-described actions of physically blocking the path of the officers multiple times during the course of a police investigation and his demands that the officers leave the scene of the investigation gave

Officer Mitchell probable cause to arrest Kustes for obstructing, impairing or hindering the officers' ability to investigate.

Accordingly, the plaintiff's claim that he was unlawfully arrested in violation of his Fourth Amendment rights must be dismissed. Likewise, the plaintiff's claim that he was unlawfully searched in violation of his federal constitutional rights must be dismissed. Where an individual's arrest is based on probable cause, "a search incident to the arrest requires no additional justification." *Riley v. California*, 134 S.Ct. 2473, 2483 (2014) (quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973)).

The plaintiff asserts state-law claims against Officer Mitchell in his individual capacity for assault, battery, malicious prosecution, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and gross negligence.

Pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise jurisdiction over these state-law claims. In determining whether to retain jurisdiction over state claims, courts should "consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Hankins v. The Gap, Inc.*, 84 F.3d 797, 802–03 (6th Cir.1996). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the

action was removed." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–1255 (6th Cir.1996).

Here, the interests of judicial economy and the avoidance of multiplicity of litigation do not outweigh the policy against needlessly deciding state law issues. As in *Hankins*, discovery is complete and there should not be a need for additional discovery if the matter is refiled in state court. *Hankins*, 84 F.3d at 803. Thus, refiling the action in state court will not result in any "undue amount of wasted or duplicative efforts." *Id*. Further, Kustes's claim for malicious prosecution involves different law and facts than his federal claims. The Court will, therefore, decline to exercise jurisdiction over the state law claims asserted against Officer Mitchell in his individual capacity.

### III.  Conclusion

For all these reasons, the Court hereby ORDERS as follows:

1) The claims against the "Unnamed Officers" in their official and unofficial capacities are DISMISSED with prejudice;

2) the motion for summary judgment (DE 32) filed by Defendant Josh Mitchell is GRANTED as follows:

   a) the claims asserted against Officer Mitchell, in his individual and official capacities, under 19 U.S.C. § 1983 are DISMISSED with prejudice;

b) the claims against Officer Mitchell, in his official capacity, for assault, battery, malicious prosecution, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and gross negligence are DISMISSED with prejudice;

c) the claims against Officer Mitchell, in his individual capacity, for assault, battery, malicious prosecution, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and gross negligence are DISMISSED without prejudice pursuant to 28 U.S.C. 1367(d);

3) the motion in limine (DE 49) is DENIED as moot; and

4) judgment will be entered consistent with this opinion and the Court's opinion dated September 3, 2013 (DE 24.)

Dated October 10, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY